## RIDDLE vs. BROWN, ET AL.

1. The "right to dig and carry away ore," from the mine of another, is an incor-
poreal hereditament, or easement; and any contract for the sale of such
a right, to be binding in law, under the statute of frauds, must be in writing.

2. A verbal contract, conferring such a right, though not binding under the stat-
ute of frauds, will nevertheless operate as a verbal license, and, while unre-
voked, will protect the person to whom it was given, from *trespass quare
clausum fregit*, for digging ore, and vest in him the property in the ore that
is actually dug under it.

3. But such a verbal license is revocable, at the pleasure of the party by whom it
is given; it is, moreover, personal, and not assignable.

4. Such a verbal license, given by A. to B., and by B. afterwards transferred to
C., will not justify C. in entering by force the enclosure of A., in which the
bank or mine of ore is situated, A. being at the time the owner of the free-
hold, and warning C. not to attempt to enter. C. in such a case, becomes him-
self a trespasser, and he may be repelled by A., with all the force necessary
to protect his possession.

5. When it becomes a material question, whether more personal injury was in-
flicted by the defendant on the plaintiff, than was necessary to protect the
possession of the former against the attempt of the latter to enter his close, it
is competent for the defendant to give in evidence conversations of the plain-
tiff held some time previous to the beating, though not communicated to the
defendant, until afterwards, showing an angry state of feeling between the
parties, concerning their respective claims to the possession of the close.

ERROR to the Circuit Court of Talladega.
Tried before the Hon. E. Pickens.

THIS was an action of TRESPASS *vi et armis*, brought by the
plaintiff in error against the defendants, for injuries to the
person.

The defendants pleaded the general issue, with leave to give
any special matter in bar, in evidence.

The record exhibits the following state of facts: The diffi-
culty arose in regard to the right of the plaintiff in error, as
one of the firm of W. D. Riddle & Co., to enter on a certain

tract of land with his wagon, to haul from thence a quantity of iron ore, which had been previously dug from an ore bank situate on said tract, by persons in his employ. This right was resisted by the defendants in error.

The right claimed by the plaintiff in error rested upon the following state of facts: One John M. Moore, who was in 1841 or '42, the owner of iron works in Talladega, entered into *a verbal* agreement with John F. Atkinson, one of the defendants, who acted at the time by the permission of his father, Stephen Atkinson, then the owner of the land on which the ore bank was situated, which is thus described in the bill of exceptions: "he (Moore) contracted with him (John F. Atkinson), for the right to dig and carry away ore from this bank, for 1000 pounds of iron, to be delivered from time to time, as he wanted it." Moore continued to get ore under this contract, until March, 1843, when he sold out his iron works to Walter D. Riddle, the brother and copartner of plaintiff. The defendant, John F. Atkinson, sent, from time to time, to Moore, under this contract, for iron, and got it, until he sold out to Riddle. When Moore sold out to Riddle, he "let Riddle have the ore bank on the same terms that he had it," and made him a deed for it. The ore bank was in the woods, unenclosed at the time of this contract. It was afterwards enclosed by Stephen Atkinson, but a gate was erected, for Moore to pass in and out after ore with his wagons. Riddle went on getting ore for a considerable time after the sale by Moore to him.

It was in proof, that the ore bank was, at the time of the difficulty, in an enclosure, in which there was growing a crop, cultivated and belonging to the defendants; and the title to the land was in the defendant, John F. Atkinson, devised to him by the will of his father, Stephen Atkinson.

It was further proved, that the said John F., the day before the difficulty, warned and forbid the wagoner of plaintiff not to pull down his fence or enter his enclosure any more to get ore.

On the day of the difficulty, the three defendants had stationed themselves near the gap, where the wagon of plaintiff commonly entered, in going to the ore bank. They all had newly cut sticks. The plaintiff, in company with another

person, rode up, and a conversation arose, in which defendant, John F., declared that the wagon of plaintiff, which was then expected, should not enter the enclosure. The plaintiff, in a mild manner, expostulated with plaintiff, and told him that he did not want to settle rights by force, but insisted that he had purchased the ore bank, was in possession, and would go in. Defendant, Atkinson, on his part insisted, that the possession was in him, and that plaintiff had no right to go in, and warned plaintiff not to take down the fence. Plaintiff then ordered his wagoner to take down the fence. Brown, at this, raised his stick, saying, "you had better not." Riddle then laid his hand on a rail of the fence, and at this juncture, he was struck by John F. Atkinson, with his stick, and a fight ensued, between the three defendants, on one side, and Riddle, his companion and the wagoner, on the other, all bearing some part, in which the defendants inflicted serious personal injury with their sticks on Riddle. Riddle also had a stick at the time, but it was his usual walking stick.

In the course of the trial, a witness testified, that plaintiff had said, some time previous to this difficulty, "that Brown and Atkinson (the defendants) were endeavoring to prevent him from getting ore from this bank, by threatening to beat him, but they could not do it; the ore bank was his, and he had possession of it; that, as to John F. Atkinson, he did not mind him any more than he would a negro; that he could or would take a cowhide to him, if he interfered with him, and run him off the place." On cross examination, the witness said he did not tell this to defendants until long after the fight occurred. Upon this, plaintiff moved to exclude the testimony, which the court refused, and plaintiff excepted.

It appeared, that defendant, John F. Atkinson, was fully apprized of the sale of the right to get ore, from Moore to the Riddles; and that ore was procured by them at this bank for a considerable time thereafter.

The court charged the jury:

1. That if it appeared that Moore had obtained a verbal license from Stephen Atkinson, or John F., in 1842, in consideration of one thousand pounds of iron, to be delivered from time to time, as he wanted it, to dig and carry away ore

from said bank, and that plaintiff had no other right to dig and carry away said ore, except what he had derived from Moore in his contract with said Moore (the charge in the record says here, "*verbal* contract"), then the contract was void, and plaintiff had no right to enter said enclosure for the purpose of hauling off the ore that had been dug ready for removal, if defendants were at the usual place of entrance, and forbid plaintiff from entering.

2. That if Moore purchased the right to dig and remove ore, as shown in the evidence, and it was a verbal agreement, then it was in the nature of a personal license, and that neither W. D. Riddle, nor plaintiff, as his co-partner, had any right to enter, dig and carry away ore under it. To these charges plaintiff excepted, and requested the court to charge :

1. That if the jury believed, from the evidence, that Moore purchased of defendant John F., by the direction of his father, Stephen Atkinson, in 1841 or '42, the right to dig and carry away the ore from this bank, for and in consideration of one thousand pounds of iron, to be delivered to him from time to time, as he wanted it ; and that he went into possession of said ore bank under said contract, and continued to haul ore until he sold to Wm. D. Riddle, in March, 1843, and that he then let him have the right, on the terms he had it ; and that defendant John F. knew of it, and that Riddle and plaintiff, as co-partner and agent, have continued in possession ever since, up to the day when the difficulty occurred ; then the plaintiff had, under such possession, such a right of entrance as entitled him to go in and out, without forcible interruption or molestation from defendants ; and that if defendants, while his team was gone with a load of ore, went to the usual place of entrance, and when plaintiff returned and attempted peaceably to enter, as aforetime, used force to prevent him, and the beating proved was then given, they must find for the plaintiff. This charge the court refused.

The admission of the evidence objected to, as aforesaid, and the charges given, and the refusal to charge, as aforesaid, are severally assigned as error.

WHITE & PARSONS, for plaintiff in error.

1. The facts in evidence, at the time the will was offered,

shew that Riddle was in possession of the ore bank, claiming under deed from Moore. This constitutes color of title, and makes him something more than a trespasser. Therefore we insist that any conveyance of the premises, thus held adversely, passed no right or title to them. A deed would certainly be inoperative under this state of facts. What difference is there in favor of a will?

2. The third exception in the record is certainly well taken. What fact material to the issue does the evidence objected to tend to establish? It certainly did not influence the conduct of the defendants at the time of the fight, for they did not know it at that time, nor until "long after the fight occurred." For the same reason, it was inadmissible in mitigation of damages.

3. The first charge must be tested by the evidence, which is all set out in the record. The court puts the case, in this charge, upon the ground that plaintiff had no other contract with Moore than a "verbal" one, when Moore proves that at the time he sold out to him "he made a deed to Riddle for it." This charge therefore is abstract, and based upon a view of the case wholly unwarranted by the evidence, and well calculated to mislead the jury.

4. The charge asked by plaintiff should have been given, because plaintiff was in peaceable possession of the ore bank, under color of title, and had been for several years; and the law does not authorize the use of force to put an end to such a possession as this.

RICE & MORGAN, *contra.*

1. The will was offered to show title in the defendant, and was offered in connection with proof of title in Stephen Atkinson, the father of John Atkinson. The title was the most material question in the case, as it brought up the question as to whether the defendants could justify an act to defend the possession of the land. (See cases cited in the paragraph numbered 3, below.)

2. The next question is, upon the competency of the proof of the previous declarations of Riddle, not communicated to the defendants until after the fight. Where a party in a civil suit is asking damages for a tresspass, the question

always arises, whether he had any improper agency in bringing the difficulty upon himself. The declarations were clearly admissible to show that plaintiff knew the license was countermanded. And in such cases as this, the question is very material whether too much force (an excess of force) was used by the alleged trespasser in defending his possession. And we all know that less force would be necessary to defend against a less determined man, than against one whose purpose of invading the possession of another is fixed and intensified, by an admitted contempt and hatred to the other. Newton v. Holford, 47 Eng. Com. Law Rep. 537.

3. The real merits of the case and the law are with the defendants. Cook v. Stearns, 11 Mass. Rep. 533; Thompson v. Gregory, 4 Johns. Rep. 81; Emerson v. Fisk, 6 Greenl. Rep. 200; 2 U. S. Dig. 788 §§ 4 and 5.

4. The foregoing authorities prove that the verbal license to Moore was not assignable; that it was merely personal.

PHELAN, J.—It becomes necessary, in this case, to ascertain with some precision, the first place, what interest or estate passed to Moore by the agreement entered into between him and defendant, John F. Atkinson, by which the former was to have "the right to dig and carry away ore from the bank" in consideration of "one thousand pounds of iron to be paid to the latter from time to time as he wanted it."

Mines are a part of the freehold, and *prima facie* the owner of the freehold has a right to the mines and minerals underneath; but this is only a presumption of law, that may be rebutted, by showing a distinct title to the surface in one, and to that which is underneath in another, for mines may form a distinct possession and different inheritances from the surface. 1 Crabb R. P. 93.

Again: There may be a right to dig ore in the mines of another, as distinct from the ownership of the mines, as that may be from the ownership of the surface. This right to dig ore in the mines of another, if it be to one and his heirs, is an incorporeal hereditament. Grubb v. Guilford, 6 Watts. It is a permanent interest in the land of another, to which a legal title can only pass by deed, and of which no sale can be made, which is binding, unless reduced to writing, agreeably

to the statute of frauds. 1 Gill & Johnson, 366; Cook v. Stearns, 11 Mass. 533.

Had the contract between Moore and defendant Atkinson been reduced to writing, and by deed, it would have created in Moore, I apprehend, by force of our statute, a fee simple in this easement; this "right to dig ore." An estate to him, where no less estate was expressly limited, would have been an estate to him and his heirs. See statute Clay's Dig. 156. But to give to it such an effect, it was indispensable that it should have been in writing. A verbal contract for an easement like this would have no more binding force in law, under the statute of frauds, than if it had been simply for the land itself.

But if it be devoid of efficacy as a contract of sale, because not reduced to writing, is it therefore void for all purposes? Not altogether. It may still serve the purpose of a license. And what is the extent to which it can go as such? A license merely—a verbal license—is the right to do a particular act, or a series of acts, without any interest in the land. Such a license will exempt a party from an action of trespass for entering the land of another to dig ore, and will give him the property in the ore which is actually dug under it. Doe v. Wood, 2 B. & Ald.; 1 Crabb R. P. 96. But such a license is revocable at any time, at the pleasure of him who gives it. We do not mean that all verbal licenses are revocable at pleasure; there are distinctions to be observed; but only such a license as that we are now considering. 1 Mass. 533; 4 John. 81; 1 Crabb, 425.

Such a license moreover is not assignable; the privilege it confers is personal to him to whom it is given. The conveyance of the land to another would be a revocation of such a license. Wallis v. Hamson, 4 M. & W.

Having ascertained the principles by which we can determine between the conflicting claims of the plaintiff to enter the enclosure, and of the defendants to repel him from effecting such entrance, we will now proceed to consider that question.

The license given to Moore, and the digging and carrying away ore for years under it, would not have given to him even, much less to the plaintiff, the possession of the ore

Biddle v. Brown et al.

bank as against the owner. The possession remained during all the time with the legal title in defendant Atkinson, and this was even more emphatically true of the enclosure in which it was situated, in which defendants had a crop growing at the time. The idea of an adverse possession either in Moore, or Riddle to whom he sold, upon which the counsel for plaintiff seemed somewhat to rely, has no just foundation. The possession of the enclosure was with all the defendants at the time, with the defendant John F. Atkinson as owner, and with the other defendants as his co-partners in cultivating the same.

No license to enter on that possession existed in the plaintiff at the time of the affair. The license that had been given was personal to Moore, and could not be transferred to the plaintiff. But such a license was revocable at pleasure, and if the right to enter had been claimed by Moore himself, instead of plaintiff, it was sufficiently revoked by the notice to the wagoner the day before, and at all events by the warning to the plaintiff not to enter at the time of the difficulty. He persisted, however, supposing, no doubt, that he was only maintaining his lawful right. In this he was mistaken. It behooves a man to proceed with great precaution, when he determines to vindicate a supposed possession against another who is in or on the premises. As must appear from the principles already stated, the possession, and the right in law to defend and maintain that possession against all the world, was with the defendants. It follows that plaintiff, in making the attempt he did to enter the enclosure, was himself a trespasser, and that defendants were justified in repelling his attempt.

These views sufficiently indicate that we find no error either in the charges given by the court, or in the refusal to charge as plaintiff requested.

The next assignment of error relates to the admissibility of the evidence showing that plaintiff, after alluding to certain threats of the defendants, had spoken in a very contemptuous manner of the defendant, John F. Atkinson, and had made threats of what he would or could do with him in certain contingencies, before the beating took place, although the witness stated that he had not told the defendant of this until sometime afterwards.

One point made in the case of the plaintiff, in the trial below, as appears from the record, was, that admitting the lawfulness of defendants' possession, the beating was excessive and beyond what was necessary for the defence and maintenance of their possession; and that defendants were guilty of a trespass on that ground. I must say, that the facts contained in the record show a case of severe, and it seems to me, unnecessary infliction of personal injury upon the plaintiff; but this was a matter purely for the jury to determine, under all the facts and circumstances of the case, to whom the court properly left it.

We see no good objection to the evidence admitted, at least to a portion of it, and the objection was general.

It was competent to show that angry feelings had arisen between these parties, in regard to their respective rights to the possession of the ore bank, previous to the beating, in order to show that plaintiff would naturally expect and come prepared to meet a vigorous resistance, if he was determined to proceed to assert his right to the possession by force, and this might serve to palliate or excuse the conduct of the defendants.

There is no error in the record, and the judgment below is affirmed.