## LOVE *vs.* GRAHAM ET AL.

1. An ante-nuptial contract, which was drawn by the husband himself, and which, through his fraud or mistake, does not include all the property which was intended to be secured to the separate use of the wife, will be reformed in equity on her application.

2. A married woman, whose trustee refuses to interpose a claim at law to

protect her separate estate when taken in attachment by her husband's creditors, may come into equity for relief.

3. As to slaves which are shown to have been purchased by the husband with his own means, although the bill of sale was taken in the name of his father as trustee for his wife, the injunction will be dissolved, and the creditor allowed to proceed at law; but as to others which are shown to have been partly purchased with choses in action belonging to the wife's separate estate, the injunction will be perpetuated, without prejudice to the creditor's right to file a bill to separate the interest of the husband from that of the wife.

4. Where the bill asks a reformation of the marriage articles, an injunction against the proceedings at law on the part of the husband's creditors, and general relief, if it also appears that the trustee named in the deed has resigned, the court may appoint another in his stead.

Error to the Chancery Court at Wetumpka.

Heard before the Hon. James B. Clark.

This bill was filed by Carolina L. F. Love, against her husband (Addison C. Love) and John G. Graham; its object was, the reformation of the ante-nuptial agreement entered into between complainant and her said husband, and an injunction against further proceedings at law by the said Graham under an attachment which he had sued out against said A. C. Love, and which had been levied on certain slaves claimed by complainant as her separate estate; there is also a prayer for general relief. The chancellor decreed a reformation of the marriage articles, a perpetual injunction as to two of the slaves attached, Merrick and Burton, which were included in the marriage contract; dissolved the injunction as to the slave Isaac, on the ground that he did not belong to the wife's separate estate, and also as to Lucy and her child, but without prejudice to the right of either party to file a bill for the purpose of separating complainant's interest in them from that of her husband; and also directed the register to report a suitable person to act as trustee in place of Erasmus Love, who was shown to have resigned.

Each party assigns errors in this court; on the part of complainant, because the chancellor dissolved the injunction as to the slaves Isaac, Lucy, and her child; and on the part of Graham, 1st, because the chancellor received testimony of conversations between Mr. and Mrs. Love anterior to the execution of the marriage articles; 2d, because he decreed the

reformation of said marriage articles; and, 3d, because he perpetuated the injunction as to the slaves Merrick and Burton.

ELMORE & YANCEY, for the complainant, contended:

1. That the evidence in the cause showed, that the three slaves as to whom the injunction was dissolved were purchased, at least partly, with the funds of the wife's separate estate; and therefore the husband's creditors could not attach and sell them at law, but must file a bill in equity to separate his interest from that of his wife.

2. That the allegations of the bill, to the effect that complainant only charged her husband with mistake, and not with fraud, did not prevent her proving fraud against him; "that fraud is a deduction from facts, and however characterized, the conclusion must be the same."—Reid v. Clark, 1 Speer's Eq. R. 350.

N. S. GRAHAM, *contra:*

Where both parties have been mistaken, and the fact about which they were mistaken was from its nature doubtful at the time of the agreement, courts of equity have refused relief.— 1 Mad. Ch. 75. A mistake as to law is no ground to reform a deed.—*Ib.* 72; Shotwell v. Murray, 1 Johns. Ch. R. 516; Lyon v. Richmond, 2 *ib.* 51: Storrs v. Barker, 6 *ib.* 166; Haden v. Ward, 15 Ala. 149; Stone v. Hale, 17 *ib.* 557; 1 Story's Eq. 125, 126-7-8-9. If a contract be entered into under a mistake of law or fact, but in good faith, each party possessing equal means of information, or equal means of acquiring it, and neither having practiced any unfairness or deception towards the other, equity will not relieve against it.—Juzan v. Toulmin, 9 Ala. 662. Where the words are plain, evidence as to the intent, or to show that there was a mistake of the fund, is inadmissible.—1 Mad. Ch. 83; 4 Vesey 676.

The evidence shows, that there was not a mistake of fact; the complainant, with the witnesses, discussed the instrument some days before it was executed, and were satisfied with it. It is, therefore, a mistake as to the legal consequences or effect of said instrument, and cannot be reformed. It speaks the

true agreement.—Trapp & Hill v. Moore & Borden, 21 Ala. 693 ; Larkins *et al.* v. Biddle *et al., ib.* 252 ; 1 Story's Eq. 128. The agreement of parties cannot be altered by the courts.—*Ib.* It is not pretended that complainant was mistaken or misled as to any fact connected with the agreement. Equity has power to compel parties to perform their agreements, but has no power to make agreements for them and compel them to be executed. There is no evidence tending to show a mistake of the draftsman. It was left to the honor of defendant, A. C. Love ; he prepared the agreement as he understood it ; no fraud is alleged ; it is repudiated. In Hunt v. Rousmaniere's Adm'rs, 1 Peters 1, it is said : "We mean to say, that where the parties, upon deliberation and advice, reject one species of security and agree to another, under a misapprehension of the law as to the nature of the security selected, a court of equity will not, on the ground of such misapprehension, and the insufficiency of such security, in consequence of a subsequent event, not foreseen perhaps, or thought of, direct a new security of a different character to be given, or decree that to be done which the parties supposed would have been effected by the instrument agreed on."—1 Peters 1 ; also, 21 Ala. 256.

The bill ought to be dismissed, because the allegations are contradictory, and because the proof does not correspond with or sustain the allegations, neither as to what the agreement was, nor as to how, nor by whom the negroes Isaac and Lucy and child were bought and paid for.—Bryan & McPhail v. Cowart, 21 Ala. 92 ; Adams v. Garrett, 22 *ib.* 602 ; Larkins *et al.* v. Biddle *et al., ib.* 252. The subscribing witnesses prove, that at the time of executing the instrument, complainant asked, "Did it secure to her her property, as was intended by her ? the answer was, it did ; and the instrument was signed." Now, does this prove what the agreement was ? Do the witnesses know what was intended ? Does this sustain the allegation of the bill, that *all* of the property, "negroes, notes, moneys, and choses in action," were to be included in said deed?

Evidence of conversations or declarations anterior to the making of the instrument, must be received with greater caution than those made at or subsequent to the execution, because the agreement, as originally understood, may have

been abandoned or altered.—Fonb. Eq., b. 2, ch. 5, § 3, n. 1, p. 433 ; Channell v. Lowthwaite, 2 Vesey jr. 473 ; Trimmer v. Bayne, 7 Vesey 508 ; Langham v. Stanford, 17 *ib.* 443 ; Richards v. Dutch, 8 Mass. 506.

But even if there was a mistake as to the moneys, it stands in this court as an ante-nuptial parol contract, which is void and obnoxious to the statute of frauds.—1 Story's Eq. 312, 313-14, and notes, pp. 367, 262 ; Andrews v. Jones, 10 Ala. 420 ; Roper on H. and W. 307 ; 1 P. Wms. 118, 120, 619 ; 2 *ib.* 245 ; Story's Eq., ch. 7, 368, 375, and notes ; *ib.* 128 ; Read v. Livingston, 3 Johns. Ch. R. 481.

LIGON, J.—The bill in this case seeks, 1st, a reformation of the marriage articles between the complainant and Addison C. Love, her husband and one of the defendants ; 2d, an injunction as to the defendant Graham, who seeks at law to charge certain slaves with the payment of a debt due to him from A. C. Love ; and, 3d, to have a trustee appointed to protect the separate estate of the complainant, in the place of Erasmus Love, who was appointed to that office by the marriage articles, and who has resigned his trust.

Whether the relief sought in the first aspect of the bill should be granted, must depend upon the proof in the case in respect to the verbal agreement between the parties in relation to the property owned by Mrs. Love before her marriage, and the failure of the marriage articles, from the fraud or mistake of the draftsman, correctly to embody the terms of that agreement. It appears from the proof, that A. C. Love, the husband, was the draftsman of the deed of settlement ; and as he was a party to it, he must be presumed to know what property of the wife was intended to be embraced in it ; and if any of this is omitted, by his fraud or mistake, it is the duty of the court so to reform the deed, as to make it include such property, and thus truly express the intention of the parties.

We concur fully with the chancellor, that the proof in this record is clear to show that the marriage articles exhibited do not conform to the directions given to the draftsman, or the terms of the verbal agreement in regard to the kind and quantity of the property intended and agreed to be secured to

the separate use of Mrs. Love. The testimony of her grandmother, her mother, and several other witnesses, is full to the fact that all the property of Mrs. Love, her money and choses in action, as well as her slaves, were to be so secured ; yet the two former are omitted in the deed. The circumstances under which it was executed by the wife are such as to forbid the idea that this omission was by her consent, or arose from any change of the original intention of the parties, occurring after the terms were agreed upon and the deed was drawn. She does not appear to have had any further connection with the matter, from the time when the directions were given until a few days before her marriage, when it was read to some of her friends, in her presence, by A. C. Love, and he was asked whether it included the money due to her from her guardian ; to which he replied, " *it did;* that the word '*proceeds*,' as used in the deed, included it." But a few minutes before the marriage, the deed was brought to her by A. C. Love, the intended husband, and on his assurance that it secured to her all her property, she executed it.

We think she had the right to confide in the representations of A. C. Love. He was about to become her husband, and from this very relation may well be supposed to possess her fullest confidence, and to exert a controlling influence over her. In such circumstances, the law does not require of a party that degree of circumspection and diligence which would be required in persons who are so situated as to be able to deal at arm's end with each other. We are constrained to hold, with the chancellor, that the representations made by A. C. Love amount to a fraud upon his wife, and that the omission of the money and choses in action out of the marriage articles was less a mistake than a fraud. We regard the allegations of the bill as substantially charging fraud, as well as mistake. It is true, fraud is not alleged in terms ; but facts and circumstances, from which fraud is the only legitimate inference, are set out in the bill, and this is sufficient.— Kennedy v. Kennedy, 2 Ala. 571.

It is a matter of indifference, however, whether the omission in the deed results from mistake or fraud ; if the deed fails to show the true agreement between the parties, or to express their avowed intention at the time it is made, for either rea-

son, a court of equity should reform it, when application is made to it for that purpose, and the fact is made to appear.

There is no error in the decree reforming the articles of marriage settlement between A. C. Love and the complainant. 11 Ala. 187; 1 *ib.* 161; 8 *ib.* 345; 5 *ib.* 761; 10 *ib.* 548.

As this deed was fairly entered into, its terms will protect the separate estate of the wife from being made liable for the debts of the husband; and it was the duty of the trustee, when a levy was made on it for this purpose, to interpose a claim to it under the statute, and have the right to it tried at law. But in this bill it is charged, and this allegation is not denied, that Erasmus Love, the trustee, refused to interpose such claim. The wife is not allowed to do so, and if she is denied the right to appeal to a court of chancery for redress, no remedy would be open to her, and, in this respect, there would be a failure of justice. We have heretofore held, however, that in such cases a court of equity may interpose by injunction, and afford her full relief.—Calhoun v. Cozens, 3 Ala. 498; Bridges & Co. v. Phillips, at the present term.

In the present case, it appears that the defendant Graham caused his attachment to be levied on two of the slaves mentioned in the deed of settlement, and as to these the chancellor correctly perpetuated the injunction. In respect to the slaves Isaac, Lucy, and her child, James Burton, the case is materially different. Isaac was purchased by A. C. Love in his own name, and, from all that appears in the record, was paid for with his own money. There is no evidence whatever, which goes to show that any portion of his wife's funds was used for this purpose, unless such presumption could arise from the fact that the bill of sale for him was taken in the name of Erasmus Love, the trustee. This presumption is very fully rebutted by other facts in the case, which tend very strongly to show, and we think conclusively do show, that the purchase money was paid by A. C. Love out of his own means. When he proposes in writing to make the purchase, he says nothing about buying on account of his wife, but makes the proposition in his own name, and refers to the fund out of which he expects to be able to make the payment, viz., money which he expects his father to obtain for him in North Carolina. Five hundred dollars of this purchase money were

paid before he got possession of his wife's funds, and his own note is executed for the balance, which he afterwards pays at different times, and then takes the bill of sale in the name of his father as trustee for his wife. We agree with the chancellor, and believe this was "an after-thought," and was an effort to cover his own property under the name of the trustee of his wife, who seems never to have had it in his possession, or in any manner to have interfered with, or had a knowledge of the purchase. The injunction was rightly dissolved as to this slave.

In respect to Lucy and her child, the weight of evidence preponderates strongly to establish the conclusion of the chancellor, which is, that they were paid for in part with the funds of the husband, and partly with the choses in action belonging to the wife's separate estate. The trustee had no agency in this purchase, nor any possession of the slaves. It does not, however, appear in what precise proportions the funds of the husband or those of the wife were used in this purchase; but it is evident that both of them have an interest in these slaves. This, however, will not authorize a creditor of the husband to proceed at law to sell his interest for the payment of his demand. We have already held, that in such cases the judgment creditor must proceed in equity to separate the interest of the wife from that of the husband; and when the latter is ascertained, it may be devoted to the payment of his debt by a decree of that court.—Bridges & Co. v. Phillips, at the present term, and cases there cited. In the case last cited, the creditor is required to become the actor in such proceedings; all that the wife can do is, to protect her interest by injunction. It would be wrong, therefore, to dissolve her injunction, as it would leave to the creditor the privilege of selling the property under his process at law.

We do not understand the chancellor as holding a different doctrine, but in drawing up his decree, we find it so worded as to dissolve this injunction as to these slaves, and this can only result in compelling the complainant to a second suit in chancery against Graham, which (without a cross-bill on his part) will accomplish no more than can be attained under the present bill. The decree of the chancellor must be here amended, so as to retain the injunction as to the slaves Lucy

and her son, James Burton, but without prejudice to the right of Graham to proceed in equity to ascertain what interest A. C. Love holds in them, to separate such interest from that of the complainant, and charge it with the payment of his debt.

As Erasmus Love has resigned his trust, it was both proper and necessary that the chancellor should have appointed another. This he was proceeding to do, when his action was arrested by the writ of error in this case. Under these circumstances, the cause must be remanded to the court of chancery, that such trustee may be there appointed.

The decree of the chancellor is affirmed in all things, except so far as it has been herein corrected. As both parties have here assigned errors, and neither set of errors has prevailed, each party must pay half the costs of this court; and the costs of the court below must be paid as directed in the decree of the chancellor.