## THOMAS *vs.* JAMES.

[BILL IN EQUITY FOR INJUNCTION OF TRESPASS ON LANDS.]

1. *When equity will enjoin trespass.*—An injunction does not lie, in the absence of special circumstances demanding or authorizing equitable interposition, to restrain the commission or repetition of a trespass on lands, of which the plaintiff is in possession as owner, when he has an adequate remedy at law; but, where the plaintiff is a married woman, and seeks to restrain the defendant from cutting timber on lands belonging to her separate estate, under a license from her husband as trustee, there is not an adequate remedy at law, and the bill will be maintained.

2. *Authority of husband, as trustee of wife, to submit to arbitration.*—Where lands are conveyed by deed to a married woman, for her sole and separate use, and her husband is appointed by the deed " trustee to manage said property for the sole use and benefit of her and her heirs," he has no power as such trustee, against the consent of his wife, to submit to arbitration a controversy with a third person who claims a right to cut timber on the lands.

APPEAL from the Chancery Court at Claiborne.

Heard before the Hon. WADE KEYES.

THE bill in this case was filed by Mrs. Emeline E. Thomas, the wife of Nathan H. Thomas, who sued by her next friend, against Robert D. James, said Nathan H. Thomas, and others; and sought to restrain the defendant James from cutting steamboat-wood on certain lands which the complainant claimed as part of her separate estate. The material facts of the case are these: On the 3d Feb'y, 1853, one W. J. R. Thomas, who was the brother of Nathan H. Thomas, being seized and possessed of certain lands in Clarke county, entered into a written contract with Robert D. James, by which, for valuable consideration, he granted to said James, for the term of ten years, "the privilege of cutting and hauling as much steamboat-wood, consisting in dead trees, on land said Thomas owns, as he may want." Nathan H. Thomas afterwards entered other lands, and, on or about the 24th November, 1854, conveyed them to said W. J. R. Thomas, who, about the same time, conveyed all of said lands to Wm. R. Agee, the complainant's father. On the 20th December, 1854, Agee conveyed all of said lands, together with several slaves, to Mrs. Thomas, "for her sole and separate use and benefit, free from any debts or incumbrances of her said husband;" the deed appearing on its face to be made in consideration of natural love and affection, and appointing said Nathan H. Thomas, the husband, "trustee to manage the said foregoing property for the sole use and benefit of the said Emeline E. Thomas and her heirs." James claimed the right, under his contract with W. J. R. Thomas, to cut wood from the lands which were conveyed by said Nathan H. to W. J. R. Thomas; which right was disputed by the complainant. This matter of controversy was submitted to arbitration by said James and Nathan H. Thomas, the latter assuming to act as trustee for his wife; and was decided by the arbitrators in favor of James, who thenceforward continued to cut wood from the lands.

The bill alleged, that the complainant's husband had no authority to make this submission to arbitration; that it was made against her wishes and consent; and that he was insolvent. The answer of the respondent James

insisted, that his contract with W. J. R. Thomas embraced, and was intended to embrace, not only the lands then owned by said Thomas, but all subsequently acquired by him; that Nathan H. Thomas was a party and privy to that contract; that said Nathan had authority, as trustee of his wife, to bind his wife by a submission to arbitration; that Mrs. Thomas was cognizant of the submission, and did not express any dissent or dissatisfaction until after the arbitrators had made their award in favor of James; and that the several conveyances above mentioned, under which the complainant claims a separate estate in the lands, were fraudulent and void in law.

On final hearing, on pleadings and proof, the chancellor dismissed the bill, but without assigning any reason for his decree; and his decree is now assigned as error.

E. S. DARGAN, for the appellant.—The only question in the cause is, whether the complainant was bound by her husband's submission to arbitration. The authorities, as well as reason and legal analogies, show that she was not.—Watson on Arbitration, 57, 58, 65, 66; Billings on Awards, 27–9; 1 Har. & John. 160.

O. S. JEWETT, contra, cited Lewin on Trusts, 248, 481; Willis on Trustees, 201; Jones v. Jones, 3 Mer. 161; Drewry on Injunctions, (Law Library for July, August, and September, 1853,) 30.

RICE, C. J.—An injunction will not lie, to prevent the commission or repetition of a trespass, in entering and cutting down timber, on land of which the plaintiff is in possession as owner, and has adequate remedy at law for the trespass; there appearing nothing in the case so special or peculiar as to call for that particular relief. But, even where there is a legal remedy for the intrusion, some peculiar circumstance or circumstances may exist, which demand, or, at least, authorize, the interposition of the conservative remedy of injunction.—2 Story's Eq. Jur. §§ 928, 929; Burnett v. Craig, at January term, 1857; Amelung v. Seekamp, 9 Gill & Johns. 468; Stevens v. Beekman, 1 Johns. Ch.

R. 318; Livingston v. Livingston, 6 *ib.* 497; Jerome v. Ross, 7 *ib.* 315; N. Y. Printing and Dyeing Establishment v. Fitch, 1 Paige, 97; also, Perkins' notes to Hanson v. Gardiner, 7 Vesey, (Sumner's edition,) 305.

Here such circumstances do exist. The complainant is a married woman. By the deed of her father executed in 1854, certain lands were conveyed to her, as her separate estate; and her husband, Nathan Thomas, was appointed her trustee, "to manage said foregoing property, for the sole use and benefit of her and her heirs." R. D. James, one of the respondents, under color of a contract which he had made with a third person, (one W. J. R. Thomas,) on the 10th February, 1853, claimed the continuing right for ten years from said last named day, to enter upon her said lands, and to cut thereon and haul away "as much steamboat-wood, consisting in dead trees, as he may want." The right, thus claimed, has no foundation. It was disputed by the complainant; and a controversy thus arose between R. D. James and complainant, respecting the right thus claimed by him. Her trustee, contrary to her wishes, and to his own duty, entered into an agreement in writing with R. D. James, submitting said controversy to the arbitrament of certain named persons, who rendered an award, that said R. D. James, under and by virtue of said contract with W. J. R. Thomas, was entitled to cut and haul steamboat-wood from her said lands; "and now said Robert D. James, Francis B. James and Samuel Boykin, (the two latter having by an agreement with the former some interest in his said contract with W. J. R. Thomas,) armed with said *award,* assert *the right,* and are now cutting and hauling steamboat-wood from off said lands," * * "and *will continue so to do,* unless restrained by the order" of the chancery court.

It is clear that the submission and award do not invest Robert D. James with the right to cut and haul steamboat-wood, from the lands which belonged to the complainant as her separate estate; because she did not assent to them, and her trustee, being a "*trustee to manage*" *her lands for her sole use and benefit,* has no power to convey to another,

by means of a submission and award, the right for a series of years to enter upon her land and cut down the timber thereon and carry it away. Such a right would be an interest in the lands, which such a trustee cannot create by means of a submission and award, not assented to by the *cestui que trust.*—Riddle v. Brown, 20 Ala. 412.

But, although the submission and award be inoperative to create such right or interest in Robert D. James, yet it might be made available as *a license,* in a suit at law brought against him *by the trustee,* for entering upon the lands and cutting down and carrying away the timber. Riddle v. Brown, *supra,* and authorities therein cited; 2 Greenlf. on Ev. § 627 and notes; Hill on Trustees, 503.

Again: If the trustee, who is also husband, could recover at law for the trespasses, the *cestui que trust,* who is also the wife, may not be willing to give to him the damages he might recover. By allowing him to sue and recover those damages, (which are but the continuing results of his known breach of trust, and the wrongful conduct of the respondents,) she may incur the hazard of losing them, under the rule recognized in Roper v. Roper, 29 Ala. 247, that if the wife lives with the husband, and he receives the income and profits of her separate estate, it will be presumed, in the absence of an express dissent on her part, to have been with her consent, and will be regarded as a gift to him.

Such views render it impossible to deny relief upon the ground, that the complainant has *a plain and adequate* remedy at law. She has not such a remedy.—See Davison v. Atkinson, 5 T. R. 432, and authorities *supra.* In this aspect, her case comes within the influence of the rule and reasoning which upheld the bill of the wife in Love v. Graham, 25 Ala. 187; Crabb v. Thomas, 25 Ala. 212; and Gerald v. McKenzie, 27 Ala. 166.

The decree of the chancellor is erroneous, and is reversed; and a decree must be here rendered, reinstating the injunction, and remanding the cause; leaving it open in all other respects to be proceeded in when remanded, according to the law as settled in this opinion. The appellees must pay the costs of this appeal.