Davis v. Young.

---

## DAVIS *vs.* YOUNG.

1. To maintain trespass, the plaintiff must show in himself either actual possession or the immediate right of possession at the time of the tortious taking.
2. If the owner has neither the actual possession, nor the immediate right of possession at the time of the tortious taking, his remedy is case or trover.
3. If the original taking was not a trespass as against the plaintiff, the subsequent conversion of the property by the defendant will not make him a trespasser *ab initio.*
4. When justification and the general issue are pleaded to an action of trespass, the plaintiff must show his actual possession, or immediate right of possession.

| | |
|---|---|
| 20 | 151 |
| 95 | 219 |
| 20 | 151 |
| 104 | 386 |
| 20 | 151 |
| 181 | 165 |
| 20 | 151 |
| 183 | 425 |

ERROR to the Circuit Court of Pickens.

Tried before the Hon. William R. Smith.

BLISS and PECK for plaintiff in error.

P. & J. L. MARTIN, *contra.*

DARGAN, C. J.—We will not examine the questions in the order in which they have been presented in the argument at the bar, but will take up the last question first, and that is, will trespass lie upon the facts disclosed by the bill of exceptions? . The plaintiff, to show title to the cotton, for the taking of which this action was brought, introduced a deed of trust, bearing date the 10th day of October, A. D. 1844, by which Adelaide Kidd conveyed to the plaintiff, Joshua Young, a number of slaves, horses and mules, with other stock and farming utensils, together with her crop of cotton, then being gathered, for the purpose of securing certain debts therein specified. The deed provided that Adelaide Kidd, the grant-

or, should retain possession of the property until the first day of January, 1845, and further, that if she should make default in the payment of the debts thereby secured, then the plaintiff should sell the property in the mode pointed out, for cash,. and from the proceeds pay the debts, &c. It appeared that the cotton was stored at a ware house in Pickens County by Mrs. Kidd, and the defendant, as sheriff, levied an attachment upon it, as her property, on the 3d day of December, 1844. This attachment was issued at the suit of Jesse H. Garrett against Adelaide Kidd, and was made returnable to the County Court of Tuscaloosa. It further appeared that the Justice of the Peace, who issued the attachment, issued an order to sell the cotton, upon an application made to him for that purpose, on the ground that it was property of a perishable nature, and in pursuance of this order the cotton was sold by the sheriff on the 1st of February, 1845, and at the time of the sale he had notice of the plaintiff's title, and the sale was forbidden by the plaintiff's agent. These are the material facts that give rise to the question, can trespass de bonis asportatis be maintained?

The rule of law is too well settled to be controverted, that the plaintiff must show in himself either actual possession of the goods, or the right of possession at the time of the tortious taking, and if he has neither the possession nor the right of possession, his title will avail him nothing, for the action is founded on the injury to the possession, and not on the mere title. But this right of possession must be immediate, that is, the plaintiff must show that he was entitled to the possession at the time the act was done. Mr. Chitty, in his work on Pleading, says, "If the general owner part with his possession, and his bailee have the exclusive right to use the thing at the time the injury was committed, the inference of possession is rebutted, and the right of possession being in reversion, the general owner cannot support trespass." Chitty, Pl. vol. 1, 169. In the case of Muggredge v. Evelette, 9 Met. 233, the facts were, that the plaintiff, being the owner of a schooner, by a parol agreement let or chartered her to one Gerresh, at ninety dollars per month, and Gerresh took possession of her. A few days afterwards the schooner was seized by an officer as the property of the original owner, from whom the plain-

tiff had bought her. The Supreme Court of Massachusetts, holding the parol contract of letting valid, decided that the action could not be maintained, and in the opinion this language is used, "If the plaintiff had no right to the possession, *then the taking* is not a direct injury to him, and whatever, and against whomsoever, his remedy may be, it is not to be sought in an action of trespass, grounded on his mere right of property without the right of possession." It has, however, been suggested that the case of Stanly v. Gaylord, 1 Cushing, 536, is incompatible with the case we have referred to; but without reviewing the case from 1 Cushing, I cannot perceive that there is any conflict whatever. There the bailee who mortgaged the chattel, had no authority or right to detain the chattel from the general owner, and at the time of the taking he could have asserted his right to the possession. Whether this latter case could be sustained on other grounds, it is needless to inquire; but it is clear that it gives no countenance to the idea, that the general owner may maintain trespass for a wrong done at a time when he had not the immediate right to the possession.

In the case of Lunt v. Brown, 1 Shep. 236, the facts were, that Winn, the owner of a mare, sold her to the plaintiff, but at the time of the purchase agreed to keep her until grazing time, and by the contract, Winn had the right, at a fixed price, to repurchase the mare at any time before the time arrived at which the plaintiffs were to take possession. The mare was attached a few days afterwards as the property of Winn, and the plaintiff brought trespass against the officer. The court held that the action would not lie, expressly recognizing the doctrine that trespass is a remedy for an injury to the possession, and that the plaintiff in this action must show either the actual possession or the immediate right of possession, at the time the wrongful act was done. The same doctrine is maintained in Putnam v. Wyley, 8 John. 432, and again in the case of Nash v. Masher, 19 Wendell, 431. In the latter case the facts were, that the owner of the wagon had left it in possession of a blacksmith, to have some work done upon it, and at the time of the taking the blacksmith had a lien upon the wagon, and the right to detain it, as against the owner, until the lien was paid; but he agreed
10

with the officer who took the wagon that he should become responsible to him for the amount of the lien, and agreed to transfer his debt to him. Trespass being brought by the owner against the officer, the question was, could the action be sustained, and after a full examination of the authorities, the court held that it could not.

I will refer to no more American authorities, but will say that I have not found one, which holds that trespass will lie by the owner of the chattel, for an injury done to it, unless at the time of the wrongful act he could have legally taken the actual possession of it. If by any contract the immediate right to the possession was exclusively in his bailee, at the time the injury was done, the owner must resort to *case or trover* to recover. Trespass is not his remedy. The English authorities, too, are in perfect harmony with the American upon this subject. In the case of Ward v. McCauly, 4 Term 480, the plaintiff had let a house to Lord Montford, ready furnished. During the lease, some articles of the leased furniture were seized under execution as the property of Lord Montford, whereupon the landlord brought trespass. The court held that the action would not lie, on the ground that the plaintiff had not the actual possession, nor the immediate right to the possession, at the time the wrongful act was done. Again, in the case of Cooper et al. v. Chitty and Blackstone, 1 Burrows, 20, the facts were, that one Johns had committed an act of bankruptcy on the 4th of December, 1753, and on the 8th of the same month a commission of bankruptcy was sued out against him, and on the same day the plaintiffs were appointed his assignees, but between the act of bankruptcy and the suing out of the commission, the goods were seized by the sheriffs of Middlesex under an execution against the bankrupt, but not sold by them until after the assignees were appointed, who had given the sheriffs notice of their title. The case was twice argued, and the opinion delivered by Lord Mansfield. The court held that the title of the plaintiffs related back to the secret act of bankruptcy, but inasmuch as they had not the right of immediate possession of the goods at the time the levy was made, trespass would not lie, and that trover was the proper remedy. This decision of Lord Mansfield has never been questioned in England, as I can discover, but on

the contrary, has been repeatedly recognized as the settled law; see 1 Term Reports, 475; Smith v. Clark, 9 Bingham, 471; 4 ib. 597; 4 M. & S. 260. These authorities convince me, that the plaintiff failed to show such a right of possession to the cotton in controversy, at the time of the original taking, as will sustain the action of trespass, and consequently that the court erred in holding the contrary.

But it has been argued that the sale of the cotton by the sheriff in February, after the plaintiff's right to the immediate possession was complete, made the sheriff a trespasser *ab initio*, and therefore the action will lie. Now, I admit that it is the settled law, that if one enter upon land, or into a house, under a license, or by authority, and he abuse the license or authority, this shall make him a trespasser from the beginning This has been the settled law ever since the case of the Six Carpenters, 8 Coke, 146. But the case at bar does not fall within that principle, for all the authorities to which we have referred hold, that if the original taking be not a trespass, as against the plaintiff, the subsequent conversion of the property will not make the defendant liable to this action. Now, let us examine the plaintiff's right of possession at the time the levy was made. By the terms of the deed, Adelaide Kidd reserved to herself the possession of the property until January, 1845. The plaintiff then, at all events, could not have the *immediate* right of possession until that time, and if in the meantime she had paid the debts intended to be secured by the deed, he never would have been entitled thereto. This was the state of the plaintiff's title on the 2d day of December, 1844, when the levy was made, and at that time the taking was no trespass upon his possession, and the subsequent sale cannot render it so.

It has, however, been urged that this question does not arise under the special plea of justification; but it is enough to say that it arises under the general issue which is pleaded, for under that issue it would not be contended that the plaintiff would be relieved from showing his immediate right to possession; indeed, that is the very evidence of his right to this action. It is not, therefore, necessary to examine whether the plea of justification is an admission of the right of possession in the plaintiff.

As this question is conclusive of the action in its present form, we deem it unnecessary to look into the other questions growing out of the record. Should the cause ever be tried again, they may all be avoided, or if not, it will then be time enough to decide them. In conclusion, we will add, that though it is always more agreeable to the court to decide on the merits of a case, than to turn the plaintiff out upon the mere form of the remedy; yet the law governing the remedy is as conclusive on the court, as the law governing the mere right.

Let the judgment be reversed, and the cause not remanded.