# Clanton *v.* Scruggs.

*Bill in Equity for Injunction of Warehouse at River Landing.*

1. *Statute of frauds; when available on demurrer* —When relief is sought in equity founded on a contract which is obnoxious to the statute of frauds, and that fact appears on the face of the bill, the benefit of the statute as a defense may be invoked by demurrer.

2. *Contract for sale of interest in lands; partial performance.*—A verbal promise or undertaking by defendant not to erect or allow the erection of a warehouse at his landing on a navigable river, if complainant would purchase the adjoining land above, erect a warehouse on it, and store his freight free of charge, is void under the statute of frauds (Code, § 1732); and it is not taken out of the operation of the statute on the ground of part performance, because the complainant, on the faith of the promise, bought the land above, erected a warehouse on it, and stored defendant's freight free of charge for several years.

3. *Estoppel by words or conduct.*—The breach of a mere executory promise or undertaking does not constitute an estoppel *en pais*, no element of fraud intervening, even though the party complaining, having acted on the faith of the promise, is injured by the breach.

APPEAL from the Chancery Court of Clarke.

Heard before the Hon. W. H. TAYLOE.

The bill in this case was filed on the 25th September, 1889, by Burrell A. Clanton, against W. L. Scruggs, John L. Scruggs, and Robert C. Long; and prayed an injunction restraining the defendants "from carry-

ing on the warehouse business at Ball's Bluff, immediately below Coffeeville Landing on the Tombigbee river, or authorizing any other persons to carry on said business at that place;" and for other and further relief under the general prayer. The Chancery Court sustained a demurrer to the bill, on the ground that the alleged agreement was void under the statute of frauds; and this decree is here assigned as error.

Wm. S. Anderson, for appellant.—(1.) The agreement set up in the bill related only to the user or non-user of the land, and was not within the terms of the statute of frauds. 8 Eng. & Amer. Encyc. Law, 703; *Leinan v. Smith*, 11 Humph. Tenn. 308; *Fleming v. Ramsey*, 46 Penn. St. 252; *Storms v. Snyder*, 10 Johns. 109; *Rice v. Roberts*, 24 Wisc. 461; *Brown v. Morris*, 83 N. C. 251. (2.) If the alleged agreement was within the terms of the statute of frauds, it was taken out of the statute by part performance. *German v. Machin*, 6 Paige, 288; 3 Paige, 545. (3.) W. L. Scruggs is estopped by his conduct from setting up the invalidity of the agreement, on the faith of which complainant has acted.—*McPherson v. Walters*, 16 Ala. 714; *Hendricks v. Kelly*, 64 Ala. 388, 57 Ala. 193; *A. G. S. Railroad Co. v. S. & N. Ala. Railroad Co.*, 84 Ala. 578; *Caldwell v. Smith*, 77 Ala. 157; Green. Ev. §§ 27, 207.

Torrey, Pillans & Torrey, and W. D. Dunn, *contra.*

Walker, J.—In 1881 a Mrs. Foster owned a tract of land in Clarke county, which included what is known as the "Coffeeville Warehouse and Landing" property on the Tombigbee river. William L. Scruggs, one of the defendants to the bill in this case and an appellee here, owned a strip of land on the river adjoining and immediately below Mrs. Foster's tract, and on which was a public ferry owned and conducted by him. Burrell A. Clanton, the complainant in the bill and the appellant here, proposed to Scruggs to join him in the purchase of Mrs. Foster's land and in carrying on the warehouse business thereon. Scruggs declined this proposition, but, as alleged in the bill as amended, "said Scruggs said further, however, that he hoped orator would purchase the Coffeeville Warehouse and carry on the business. Said William L. Scruggs stated further to orator, as an inducement to his purchasing said Coffeeville 'Warehouse and Landing,' that if orator would purchase said 'Warehouse and Landing,' and would store all of his

[Clanton v. Scruggs.]

(Scruggs') freight free of charge, and be responsible for it just as if he was paid storage, that he would promise orator that he never would put up a warehouse on his little strip of land immediately below Coffeeville Landing himself, and he would never suffer anyone else to put up a warehouse on said land. Orator then told said defendant Scruggs that this arrangement was entirely satisfactory to him, that he accepted it, and that he would carry it out." It is shown by the bill as amended that the complainant, acting under this contract and agreement with Scruggs, very shortly thereafter purchased Mrs. Foster's tract of land, erected a new warehouse and other improvements thereon, and from February, 1882, carried on there the warehouse business, and received and stored freight for Scruggs, free of charge, as provided by the agreement with him ; that the agreement with Scruggs was a great part of the inducement to the complainant for the undertaking. It is further shown by the amended bill that, in 1887, Scruggs permitted his son and son-in-law, who are parties defendant, and were fully aware of the agreement above mentioned, to erect a warehouse on his land referred to in the agreement, and they are conducting a warehouse business thereon in opposition to the business of the complainant. The purpose of the bill is to have the defendants restrained from conducting the warehouse business on the land of Scruggs above mentioned. It is charged that the conduct of that business causes irreparable injury to the business of the complainant. The demurrers to the bill as amended were sustained, and, the complainant declining to amend his bill further, it was dismissed.

It clearly appears from the averments of the bill as amended that the alleged agreement between the complainant and W. L. Scruggs was oral, and was not evidenced by any writing. That being the case, the question of the effect of the statute of frauds upon the validity of the contract is properly raised by a demurrer.

A privilege which the proprietor of one tenement has, in respect to a neighboring tenement, to require the owner of the latter or servient tenement to suffer to be done or to abstain from doing something on his own lands for the benefit or advantage of the owner or proprietor of the former or dominant tenement, is an easement or servitude. A common form of such an easement or servitude is the prohibition of the proprietor of the servient estate from erecting or permitting the erection of a certain character of structure thereon, or from carrying on or permitting to be carried on

a particular kind of business or occupation thereon. *McMahon v. Williams*, 79 Ala. 288. The right of the dominant owner, in such case, is an interest in the servient estate; and a contract for the sale of such an interest is a contract for the sale of an interest in lands, tenements, or hereditaments, within the meaning of the provision of the statute of frauds on this subject.—Code, § 1732; *Riddle v. Brown*, 20 Ala. 412; 6 Am. & Eng. Encyc. of Law, 143. There is no pretense in this case that Clanton was in any way put in possession of the land of Scruggs, in which he claims an interest as the beneficiary of an easement. There having been no writing at all in reference to the matter, and the purchaser not having been put in possession by the seller, the alleged agreement was void under the statute of frauds.

The fact that the complainant has performed and continues to perform the undertaking on his part to store Scruggs' freight free of charge, and to be responsible for it just as if he were paid storage, and that Scruggs has accepted the benefit of this stipulation in his favor, can not have effect to take the alleged agreement out of the influence of the statute of frauds, or to estop Scruggs from availing himself of the protection of that statute. An essential element of an estoppel *en pais* is a false representation, or a concealment of material facts, upon which another has been induced to act to his prejudice. The representation or concealment must, in all ordinary cases, have reference to past or present facts. A mere promise of something to be done in the future is not such a representation or concealment. One's failure to perform a promise is a very different thing from his denial of a state of facts which he had previously held out as in existence. The rule which precludes a person from claiming that the facts of a matter are different from what he represented them to be to another, who has acted on the faith of his former statements, is not to be applied to prevent a party from setting up the invalidity of a mere executory contract. One party to an invalid executory agreement is not entitled to hold the other party to the agreement just as if it had been originally valid, because the latter has received the benefit of a part performance by the former. The fact that one of the parties to such an agreement has acted on the faith of its validity does not raise up an estoppel against the other party to deny that it is binding on him. A mere breach of promise can not constitute an estoppel *en pais.*— *Weaver v. Bell*, 87 Ala. 385 ; *Starry v.*

[Clanton v. Scruggs.]

*Korab,* 65 Iowa, 267 ; *Jackson v. Allen,* 120 Mass. 64 ; *Langan v. Sankey,* 55 Iowa, 52.

If the promise is made fraudulently, and is not meant to be kept, it is not denied that this circumstance might introduce an element of estoppel into the transaction.—Bigelow on Estoppel, (5th Ed.) 576. This question, however, is not decided, as there is no such feature in the present case. There is no allegation of fraud on the part of Scruggs, or that at the time of his alleged promise he did not intend to perform it. The case made by the bill is simply that of an executory contract which can not be enforced because it is void under the statute of frauds. In *Weaver v. Bell, supra,* it was said : "A representation relating to future action or conduct operates as an estoppel only when it has reference to the future relinquishment or subordination of an existing right, which it is made to induce, and by which the party to whom it was addressed was induced to act." The representation there referred to does not include a mere promise to do or to refrain from doing something in the future. It could not have been intended to assert that an invalid executory agreement may be made binding by means of an estoppel resulting from the fact that one of the parties has acted on the faith of its validity. It is true that a disavowal of a present right, which might otherwise be asserted in the future, may be treated as the representation of an existing state of fact. But an executory agreement which is void under the statute of frauds can not be made effectual by estoppel, merely because it has been acted on by the promisee, and has not been performed by the promisor. *Brightman v. Hicks,* 108 Mass. 246. Such a rule of estoppel would take the sting out of the statute of frauds, and defeat its manifest purpose. The amended bill in this case shows that the alleged right upon which the complainant relies as the basis of his claim to relief depends upon an executory agreement which was within the statute of frauds, and that the provisions of that statute were not conformed to in the making of the agreement. The grounds of demurrer suggesting the invalidity of the agreement because of such non-conformity were properly sustained.

Affirmed.