# Hicks Bros. *v.* Swift Creek Mill Co.

## *Action for Trespass.*

1. *Adverse possession; can not arise from premissive entry.*—Where entry is made upon land by permission of the owner, the possession following such entry is not adverse, but is in subordination to the rightful title.

2. *License to enter land; when in parol revocable; estoppel.*—A parol license to do an act upon the land of another is revocable at the option of the licensor, although the licensee has performed acts thereunder, or has expended money in reliance thereon; and the fact that the license is executed or that money has been expended by the licensee does not equitably estop the licensor from revoking the license.

3. *Same; revoked by sale.*—A license to do or perform an act upon the lands of another being a personal privilege, is revoked by the death of the licensor or by his conveyance of the lands to another, or whatever would deprive him of doing the acts in question or giving permission to others to do them.

4. *Same; can not ripen into an easement.*—Since an easement is an interest in or over the soil of another, a mere parol license to do an act upon the land of the licensor can not ripen into an easement, conferring any permanent interest in said land, which is not revocable by sale thereof.

5. *Trespass; recovery of exemplary or vindictive damages.*—In an action of trespass, exemplary or vindictive damages are recoverable if the trespass is committed with a bad motive, with an intent to harrass or oppress or to injure.

APPEAL from the Circuit Court of Autauga.
Tried before the Hon. A. H. ALSTON.

Appellants on the 7th day of September, 1900, instituted the present action of trespass in the circuit court of Autauga county, against the appellee, alleging that the plaintiffs being the owners of land which is known as "The Jim Nunn Creek Place," defendant "constructed, and has since, without the consent of the plaintiffs, maintained on said lands, a ditch for the purpose of floating logs down the same to Autaugaville to the mill of the defendant; that in constructing the said ditch, and to provide a supply of water, said defendant, at the point on said land where said ditch crosses what is known as 'Pineywoods' or 'Pine Creek,' which latter creek flows easterly across said lands to Swift creek and accorded drainage to said lands, erected a dam across said Pine Creek, whereby the waters accustomed to flow along said Pine Creek into Swift Creek were prevented from so flowing away, and the channel of said Pine Creek was so filled up that on occasions of heavy rains the said water and sand, instead of flowing as it was and is accustomed to flow into the said Swift Creek, has flowed out of the said channel of Pine Creek, * * * over and across the lands of the plaintiffs and out of said ditch over and across the plaintiffs' lands," causing damage, etc.; that said ditch and obstruction had been maintained, and said ditch used and operated by the defendant for a period of one year, and ever since the plaintiffs became the owner of said lands; and that plaintiffs have sustained damage to the amount of $5,000, for which they sue.

In addition to the facts stated in the opinion, the plaintiff introduced evidence tending to show that from the date of the plaintiffs' purchase of the lands to the bringing of the present suit, the defendant used said ditch and dam for floating the logs in and down said ditch to the plaintiffs' lands.

There was evidence tending to show damage to the lands from the overflow of Pine Creek (across which the dam was erected) in case of heavy rains during said period, on account of said dam in the way of rendering the land too wet for cultivation and in depositing sand thereon, and the amount of such damage. But the evi-

dence on this point was contradictory—the defendant's evidence tending to show that there was no damage to the land, and none resulting from the ditch or dam, and that if there was any damage to the lands at all, it was on account of the overflow of Swift Creek by unusual and extraordinarily heavy rains, and not on account of the said ditch or dam. The evidence further tended to show that plaintiffs made claim of the defendant within a few months after they purchased the land, for rent, they made no objection to the structures, being there, but wanted rent for the land, and that the defendant continued to operate said structures, until the time of bringing this suit.

It was also shown without conflict that the erection of the said dam and ditch was made at great cost and expense of money and labor to the defendant, and that said permission was obtained before said work was done; that the defendant was then and has since been engaged in operating a saw mill in Autauga county, for squaring timber for market, and that said ditch was used for the purpose of floating logs from the defendant's lands to the said saw mill. There was no evidence that the dam or ditch was erected or operated in a negligent manner, and there was no evidence that the defendant had done anything with reference to the said ditch or dam since the purchase by the plaintiffs except to run logs down said ditch to the defendant's mill, and it did not appear that any special damage complained of by the plaintiffs resulted from the running of the said logs.

The court in its general charge to the jury instructed them that the plaintiffs were not entitled to recover, except for damages, if any were shown, resulting from negligent operation and maintenance of the dam and ditch mentioned in the complaint. The plaintiffs separately excepted to this portion of the court's oral charge. The court further charged the jury that if the ditch and dam complained of were constructed prior to the time the plaintiffs purchased the land, and by and with an agreement, or consent of Norwood Smith, who then owned the land, and the defendant was using and operating the ditch and dam under such consent and agreement when the plaintiffs purchased in 1899, and the

plaintiffs when they purchased were informed of this fact, then they took the lands in that condition, and could not claim damages of the defendant for the reasonable and careful operation and use of said structures by the defendant for the purposes for which they were constructed. To the giving of this charge the plaintiffs excepted.

Plaintiffs requested the court to give to the jury, among others, the following written charges: (1.) "If the defendant had notice that the land upon which they entered was the plaintiffs, and if with such notice the defendant persisted in entering upon the same for the period between the purchase of the land to the bringing of this suit, without the consent of the plaintiffs, this is evidence tending to show malice and a reckless disregard of the property right, for which, in the discretion of the jury, exemplary damages may be awarded." (4.) "That there is in this case no evidence of any legal authority in the defendant to enter upon the plaintiffs' land, and maintain and operate its ditch across the plaintiffs' land." The court refused to give each of the charges asked by the plaintiffs, and the plaintiffs separately excepted.

The court at the request of the defendant gave to the jury, among others, the following written charges: (B.) "The court charges the jury that the plaintiffs can recover no damages to the lands known as the Jim Nunn Creek Place, except for such damages as may have been occasioned after their purchase of said lands, and prior to the bringing of this suit." (F.) "The court charges the jury that if the ditch and dam complained of were cut and made by the defendant in 1896, by and under a license from the then owner of said land, and it required the expenditure of money and labor to cut the ditch and make the dam, then the defendant's use of the ditch and dam has not been wrongful and the plaintiff can not recover in this action." (J.) "The court charges the jury that if the ditch and dam complained of were constructed during the year 1896, by and with an agreement and consent of Norwood Smith, who then owned the land, known as the Jim Nunn Creek Place, and de-

fendant was using and operating said ditch and dam under such consent and agreement when plaintiff's claim to have purchased said land in 1899, and plaintiffs were informed of this fact when they purchased, then the plaintiffs can not recover of the defendant in this case." (K.) "The court charges the jury that if they are reasonably satisfied from the evidence that prior to the purchase of the lands known as the Jim Nunn Creek Place by the plaintiffs and while said lands were owned by Norwood Smith, and the defendant constructed the ditch and dam in question on said land, by and with the consent and agreement of said Smith, and said ditch and dam were on said lands at the time plaintiffs purchased the same, and were being then used and operated by the defendant in the same manner it had been used previous to plaintiffs' purchase, and that defendant has been guilty of no negligence in the operation of said ditch and dam since the purchase of said lands by the plaintiffs, then your verdict should be in favor of the Swift Creek Mill Co." To the giving of each of these charges the plaintiffs separately excepted.

There were verdict and judgment for the defendant. The plaintiffs appeal, and assign as error the several rulings of the trial court to which exceptions were reserved.

GUNTER & GUNTER, for appellant.—There is no use in discussing the question of adverse possession in any aspect as avoided the operation of the conveyance to the plaintiffs, as there was no purchase or contract of purchase with the defendant by the former owner, and because in case of a license merely, there is no adverse possession against the owner.—*Wiseman v. Luckinger,* 84 N. Y. 44; *St. Vincent v .Troy,* 76 N. Y. 108; *Jackson v. Babcock,* 4 John. 418; *Luce v. Carley,* 24 Wend. 451.

A license to construct and operate a ditch across lands conveys no interest in the land and is revoked by a conveyance of the land. The right to maintain and operate a ditch over or across land, for any purpose, is an interest in the land, and no contract for such a right is operative in law, unless it is in writing and subscribed, as provided by the statute of frauds.—10 Ency. of Law,

(2d ed.), 398-9; *Shirley v. Crabb*, 139 Ind. 200, 46 Am. St. Rep. 379; *Riddle v. Brown*, 20 Ala. 412; *Clanton v. Scruggs*, 95 Ala. 279; *McMahon v. Williams*, 79 Ala. 268; *Franklin v. Pollard Mill Co.*, 88 Ala. 318; *Hammond v. Winchester*, 82 Ala. 470; *Tillis v. Treadwell*, 117 Ala. 445.

"An easement implies an interest in the land in or over which it is enjoyed.—*Rowbotham v. Wilson*, 8 El. & Blac. 123; Washburn on Easements, 69. While a license carries no such interest, and is revocable at the will of the owner of the servient estate."—Notes to 6 Law. Rep. 159; *Veghte v. Raritan*, 19 N. J. Eq. 153; *Ex parte Cowbern*, 1 Cow. 568; *Wolfe v. Frost*, 4 Sandf. 72; *Foster v. Browning*, 4 R. I. 47; *Murdock v. Whitney*, 15 Wend. 381; *Miller v. A. & S. R. R. Co.*, 6 Hill. 61; *Selden v. D. & H. R. R. Co.*, 29 N. Y. 639; *Babcock v. Utter*, 1 Keyes, 397; Washburn on Real Property, 542, and cases cited.

A parol license to do certain acts on land is revocable, not only at the will of the owner of the property, but also by his death, by alienation or demise, and by whatever would deprive the original owner of the right to do the acts in question, or give permission to others." *Hadkins v. Farrington*, 150 Mass. 19; *White v. Railway Co.*, 139 N. Y. 24; *Welsh v. Taylor*, 134 N. Y. 450; *Wheelock v. Noonan*, 108 N. Y. 148; *DeHaro v. U. S.*, 5 Wall. 627; *Bixby v. Bent*, 59 Cal. 529; *Spacy v. Evans*, 152 Ind. 432; *Nunnelly v. S. I. Co.*, 94 Tenn. 410, 28 L. R. A. 428; *Ricker v. Kelly*, 10 Am. Dec. 41, 2-3, notes.

When any trespass is knowingly committed and is continuous and is persisted in after notice, no stronger case for exemplary damages for trespass to property can be stated.—*Vase v. Stickney*, 8 Minn. 81; *Seeman v. Feeney*, 19 Minn. 82; *Farwell v. Warren*, 51 Ill. 467; *Clevenger v. Dunaway*, 84 Ill. 367; *Trauerman v. Lippincott*, 39 Mo. App. 478; *Goetz v. Ambs*, 27 Mo. 28; *Lynd v. Picket*, 82 Amer. Dec. 89; 15 Cen. Dig. 1891, *et seq.*

LOMAX, CRUM & WEIL, *contra.*—A license, as a term of real estate law, we understand is; "an authority to do a particular act or series of acts upon the lands of an-

other without possessing any estate therein." It may be created by writing, by parol or it may be inferred from circumstances in the relationship of the parties. The licensee has the right to do anything which is necessary for the full enjoyment of the license, so long as he acts within the terms of the license, and is entitled while so acting, to complete protection.

While some of the States have held that a parol license so executed is revocable, this court, with those of a majority of the other States, and following, as the authorities frequently say, "the most reasonable and better rule of law," has expressly held that an executed parol license, where the licensee has gone to expense in consequence thereof, is *irrevocable,*—upon the theory that the revocation under such circumstances would clearly *work a fraud upon the licensee,* and that the licensor by standing by and allowing the licensee to make expenditures, relying upon the license, has estopped himself from revoking the license.—13 Am. & Eng. Encyc. of Law (2d ed.), 1145; *Rhodes v. Otis,* 33 Ala. 578; *Rerick v. Kern,* 16 Am. Dec. 497; *Ricker v. Kelly,* 10 Am. Dec. 38; *DeGraffenried v. Savage,* 9 Col. App. *Ferguson v. Spencer,* 127 Ind. 66; *Buchanan v. Railroad Co.,* 71 Ind. 265.

A license, not creating an easement nor giving rise to an interest in land, is *not within the statute of frauds,* and need not be in writing. The form of the authority is immaterial and does not affect its nature, and a written license, even though under seal, has only the same effect as an oral license. The statute of frauds, we insist, has no application to this case.—18 Am. & Eng. Encyc. Law (2d ed.), 1130; *Rhodes v. Otis,* 33 Ala. *supra; Sampson v. Burnside,* 13 N. H. 264; *Fenlimen v. Smith,* 4 East. 108; *Taylor v. Waters,* 7 Taunt. 374; *Cook v. Stearns,* 11 Mass. 536; *Ricker v. Kelly,* 10 Am. Dec. 38; *Hazelton v. Putnam,* 54 Am. Dec. 158; *Woodbury v. Parshly,* 26 Am. Dec. 739.

If, therefore, the licensor could not have maintained an action of trespass against appellee for the use of the ditch so constructed, as we think we have clearly shown, his grantors, appellants here, took no right superior to

27c

him. Certainly he could not indirectly do what he could not do directly. See also *Williams v. Flood,* 63 Mich. 487; *Campbell v. R. R. Co.,* 110 Ind. 490; *Buchanan v. Railroad Co.,* 71 *Ib.* 265; *McKellip v. McIlhenny,* 28 Am. Dec. 711; *Snowden v. Wilas, supra; Simons v. Moorhouse,* 88 Ind. 395; *Stevens v. Benson,* 19 Ind. 369; *Prince v. Case,* 27 Am. Dec. 675.

TYSON, J.—Practically but a single question is presented for our consideration and determination. It is whether the defendant, who is sued for a trespass upon the plaintiffs' lands, acquired an irrevocable license from the plaintiffs' grantor to use and maintain a ditch and dam for the purpose of floating logs. The facts, out of which this question arose, are undisputed and are these: One Smith, being the owner of the lands, in 1896 gave verbal permission to the defendant to construct and operate the ditch and dam upon them, which was done by it at great cost. In August, 1899, the plaintiffs became the owners of the lands by deed upon which these structures were constructed, and went into possession of them, with full knowledge that the defendant was actively using and operating the ditch and dam, claiming the right to do so, under the permission given them by Smith.

Preliminary to a discussion of the question, it may not be amiss to say that, under these facts, no question of adverse possession can possibly arise. The entry by defendant being permissive, its possession was not adverse, but was in subordination of the rightful title. *Collins v. Johnson,* 57 Ala. 304; *Jesse French Piano Co. v. Forbes,* 129 Ala. 471; 18 Am. & Eng. Ency. Law (2d ed.), 1130.

It is not insisted by appellee that the permission granted to it created an easement. Clearly such an insistence, if made, would be untenable, for the reason that it would have required a deed to have conveyed such a right. For "an easement must be an interest in or over the soil," and does not lie in livery, but in grant. Wash. on Easements, p. 6; 10 Am. & Eng. Ency. Law (2d ed.), 409; Jones on Easements, § 80; Brown on

Statute of Frauds, § 232. The difference between an easement and a license is, the former implies an interest in land, while the latter does not. An easement must be created, as we have said above, by deed or prescription, while a license may be by parol. The former is a permanent interest in the realty, while the latter is a personal privilege to do some act or series of acts upon the land of another without possessing any estate therein, and is generally revocable at the will of the owner of the land in which it is to be enjoyed.—Wash. on Easements, *supra;* Jones on Easements, § 63. And when revocable, it is revoked by the death of the licensor, by his conveyance of the lands to another, or by whatever would deprive him of doing the acts in question or giving permission to others to do them.—*Hodgkins v. Farrington,* 5 L. R. A. 209; 18 Am. & Eng. Ency. Law, p. 1141 and note 10; Jones on Easements, § 73 and note 4. Confessedly the license to the defendant in this case was revoked by the conveyance of Smith, from whom it acquired it, unless he estopped himself to do so. And that it is insisted he did because the defendant has been at great cost in constructing the ditch and dam, being induced to do so under the permission granted to it. It is further contended that the license has become an executed one and, therefore, irrevocable. To use the language of Baron Parke: "It certainly strikes one as a strong proposition to say that a license can be irrevocable, unless it amounts to an interest in the land."—*Williams v. Morris,* 8 Mess. & W. 488. To say nothing of so thin and gauzy attempt to evade the provision of the statute of frauds, requiring a sale of all interest in lands to be in writing except leases for a term not longer than one year; unless the purchase money, or a portion thereof, be paid and the purchaser be put in possession of the land by the seller.—Subdiv. 5 of § 2152 of Code. In other words we are asked to hold, although the license to the defendant when granted was not intended by either party, to be anything more than a mere personal privilege to it, revocable by Smith at his will, and knowing as it did, that under this license it acquired no interest whatever in the lands, that forsooth, with a knowledge of all these facts,

it acquired an indefeasable title to an easement over them because it expended money in constructing the ditch and dam. For it is too plain for argument, that if Smith is estopped to revoke the license, all others who may acquire his title would be and the defendant would enjoy a fee simple title to an easement, which had its origin in a mere license, and this too without paying one cent of consideration therefor, to say nothing of so plain and palpable violation of the statute of frauds. Smith is not so much as shown with or without consideration, to have made any promise that he would not exercise his privilege of revoking the license. And there is no pretense that he made any misrepresentation of any fact that induced the defendant to expend its money. The broad proposition is asserted that because he granted the license, knowing the purpose for which it was to be used, that he could never revoke it, because it would be a fraud to allow him to do so, and because it has become executed. We are aware that many courts hold this contention to be sound, but we cannot subscribe to it. Reason and the great weight of authority are against it. In Browne on the Statute of Frauds, § 31, it is said: "In some of the earlier decisions, both English and American, the licensee was protected against revocation, on the ground that the licensor was estopped to revoke a license on the faith of which the licensee had incurred expense; but is now well settled that the doctrine of estoppel does not apply, inasmuch as the licensee is bound to know that his license was revocable, and that in incurring expense he acted on his own risk and peril. Courts of equity also have repeatedly declined to interfere on this ground." See also note 3 for cases cited to this.

In Jones on Easements, section 84, it is said: "An oral promise to grant an easement is not sufficient to raise an estoppel in favor of one who has acted upon it. In a case not relating to easements Mr. Justice GRAY states a principle which is applicable to this subject: 'A promise, upon which the statute of frauds declares that no action shall be maintained, cannot be made effectual by estoppel merely because it has been acted

upon by the promisee and not performed by the promisor.' "

In 18 Am. & Eng. Ency. Law (2d ed.), p. 1146, it is said: "Acording to the prevailing view of the courts in England and a large number of the courts of the states of the United States, neither the execution of the license nor the incurring of expense, nor both combined, affect the right of the licensor, and he may revoke under all circumstances. It is held that the statute of frauds prevents any act other than the giving of a deed from vesting an irrevocable interest in land." See cases cited in note 7 in support of this proposition.

Mr. Freeman in his note to *Lawrence v. Springer*, 31 Am. St. Rep. 713 and 715, says: "A parol license is founded in personal confidence, and is defined to be an authority given to do some act, or a series of acts, on the land of another, without passing any interest in the land; * * * is a complete answer and defense to a claim of adverse possession set up by the licensee, * * * and not assignable. * * * At common law a parol license to be exercised upon the land of another creating an interest in the land, is within the statute of frauds, and may be revoked by the licensor at any time, no matter whether or not the licensee has exercised acts under the license, or expended money in reliance thereon. In many of the states this rule prevails, while in others the licensor is deemed to be equitably· estopped from revoking the license, after allowing the licensee to perform acts thereunder, or to make expenditures in reliance thereon. These two lines of cases cannot be reconciled; for one of them holds that an interest in land cannot be created by force of a mere parol license, whether executed or not, while the other declares that where the licensee has gone to expense, relying upon the license, the licensor may be estopped from revoking it, and thus an easement may be created. The former line of cases, it seems to us, is founded upon the better reason. They decide that a parol license to do an act on the land of the licensor, while it justifies anything done by the licensee before revocation, is revocable, at the option of the licensor, and this, although

the intention was to confer a continuing right, and money has been expended by the licensee upon the faith of the license. Such license cannot be changed into an equitable right on the ground of equitable estoppel."

Case after case might be cited to support the principles announced by these text-writers, but they are too. numerous to do so here. They can be found by reference being had to the notes referred to in the text quoted. However, before examining the decisions of our own court, we will refer to the case of *Thoemke v. Fiedler*, 91 Wis. 386, because of its striking analogy to the one in hand. We quote from a part of the opinion: "The oral agreement under which the ditch across the defendant's land was made did not create an easement in the land. An easement is a permanent interest in the lands of another, with a right to enjoy it fully and without obstruction. Such an interest cannot be created by parol. It can be created only by a deed or by prescription. But this agreement did not have the effect of a parol license. A license creates no estate in lands. It is a bare authority to do a certain act or series of acts upon the lands of another. It is a personal right and is not assignable. It is gone if the owner of the land who gives the license transfers his title to another, or if either party die. So long as a parol license remains executory, it may be revoked at pleasure. So an *executed* parol license, under which some estate or interest in the land would pass, is revocable. Otherwise title would pass without a written conveyance, 'in the teeth of the statute of frauds.' Nor is such a license made irrevocable by the fact * * * that expenditures have been made on the faith of it. * * * Nor can the parol agreement be enforced in equity by way of specific performance."

We will now examine our own cases. In *Riddle v. Brown*, 20 Ala. 412, it was held that the right "to dig and carry away iron ore" from the mine of another is an easement; and any contract for the sale of such right, to be binding, must be in writing. That a verbal contract conferring such a right, though not binding under the statute of frauds, will nevertheless ope-

rate as a verbal license and while unrevoked, will protect the person to whom it was given, from trespass *quare clausum fregit,* for digging ore and vest in him the property in the ore that was actually dug under it; but that it is revocable, at the pleasure of the party by whom it was given, and was personal and not assignable.

In *Motes v. Bates,* 74 Ala. 378, it was said: "We find no evidence in the record, tending to show that the plaintiff, Bates, had any claim of legal right to be upon this portion of the defendant's field. It is shown that the lessee agreed to use the public road; and his employes, or sub-tenants, had no greater rights than he had. If the plaintiff's alleged custom in using the pathway, for some time previous, could be construed into a permission by defendant to do so, this was, at best, only a parol license, *which was revocable at the pleasure of the person giving it.* Every license of this kind, by which one is permitted without consideration, to pass over the lands of another, is essentially revocable in its very nature, its continuance depending upon the mere will of the person by whom it was created or granted." Citing approvingly *Riddle v. Brown, supra.*

In *Tillis v. Treadwell,* 117 Ala. 448, quoting from *Rudisill v. Cross,* 54 Ark. 519, where it was held: "The obligations of a land owner to build and maintain a division fence, in whole or in part, for the benefit of adjoining land, is something more, indeed, than an obligation to furnish the materials and labor necessary from time to time for the erection and reparation of the fence; it imposes a burden upon the land itself. A partition fence ordinarily must rest equally upon the land of the respective proprietors. Hence an agreement of one of those proprietors to maintain such a fence necessarily imports a dedication of the use of the land required to support half of it. To that extent it is, therefore, an estate in the land itself. In accordance, then, with the general rule that an easement, being an interest in realty, cannot be conveyed or reserved by parol, an agreement by an owner of land to maintain a partition fence between such land and that of an adjoining proprietor cannot ordinarily rest in parol, but to be

binding, must be in writing." Our court then proceeds: "A grant to an adjoining proprietor of the use of a wall on his own premises, as a partition wall between their buildings, is the grant of an easement, and a parol agreement to build and grant the use of such wall is within the statute. * * * Under our decisions parol agreements for the grant of easements are void under the statute.—*Riddle v. Brown*, 20 Ala. 412; *Hammond v. Winchester*, 82 Ala. 470." See also the following cases in which *Riddle v. Brown* is cited approvingly: *Heflin v. Bingham*, 56 Ala. 575; *Chambers v. Ala. Iron Co.*, 67 Ala. 357; *L. & N. R. R. Co. v. Boykin*, 76 Ala. 564; *Motes v. Bates*, 80 Ala. 368; *Hammond v. Winchester*, 82 Ala. 477.

The right of a licensor to revoke a license given by him is fully recognized by our court, as will appear from a mere cursory examination of the cases cited above. And, indeed, is fully recognized in the case of *Rhodes v. Otis*, 33 Ala. 578, upon which the defendant relies to support its contention of estoppel. Suffice it to say, that in that case a consideration was paid for the easement or license and the licensee or transferee put into possession of the land and water-way over which the rights to him were agreed to be granted. There was, therefore, no question of the operation of the statute of frauds, and, indeed, could not be. This being true, upon the plainest principles of equity, the licensor or seller should not have been permitted to retain the purchase money paid to him and to destroy the rights which he had sold to the other party. This is far from sustaining the doctrine contended for here.

In *Clanton v. Scruggs*, 95 Ala. 282, it is said: "The fact that one of the parties to such an agreement has acted on the faith of its validity does not raise up an estoppel against the other party to deny that it is binding on him. A mere breach of promise cannot constitute an estoppel *en pais.—Weaver v. Bell*, 87 Ala. 385." Continuing, on page 283, after quoting from *Weaver v. Bell, supra,* that "A representation relating to future action or conduct operates as an estoppel only when it has reference to the future relinquishment or

subordination of an existing right, which it is made to induce, and by which the party to whom it was addressed was induced to act," the court said: "The representation there referred to does not include a mere promise to do or refrain from doing something in the future.   *   *   *   *Brigham v. Hicks,* 108 Mass. 246. Such a rule, of estoppel would take the sting out of the statute of frauds, and defeat its manifest purpose." The case of *Brigham v. Hicks,* cited approvingly, is the one from which the quotation from Jones on Easements was taken.

It is clear that the decisions of this court are in harmony with the principles announced by us and with the text-writers from whom we have quoted at length. Smith, not being estopped, his conveyance of the land *ipso facto* was a revocation of the license to the defendant and the plaintiffs having acquired the legal title to the land and to the ditch were entitled to the immediate possession thereof and have a right to maintain this action and to recover such damages as they may have suffered by reason of the trespass committed by defendant.—*Davis v. Young,* 20 Ala. 151; *Boswell v. Carlisle,* 70 Ala. 244; *Dunlap v. Steele,* 80 Ala. 424; *Fields v. Williams,* 91 Ala. 502. And the jury may award exemplary damages if they see proper.—*Wilkinson v. Searcy,* 76 Ala. 181; *Allen v. Daniel,* 75 Ala. 408. "Whatever is done," says SHAW, J., in *Wills v. Noyes,* 12 Pick. 324, "willfully and purposely, if it be at the same time wrong and unlawful and known to the party, is in legal contemplation malicious."—*Lynd v. Picket,* 82 Am. Dec. 89.

There is nothing in the facts which tends in the remotest degree to show that the plaintiffs ever renewed the license. On the contrary, they are shown to have asserted their rights under the revocation by demanding the payment of rent of defendant.

It is scarcely necessary to say that no damages for the negligent maintenance or operation of the ditch or dam are sought to be recovered in the complaint, and indeed, could not be under its averments.

Reversed and remanded.