# Thompson *v.* New South Coal Company *et al.*

## *Bill for Specific Performance of Contract.*

1. *Statute of frauds; defense, how raised; demurrer.*—Where a contract relied on by complainant is shown by the bill, the defense that it is obnoxious to the statute of frauds may be raised by demurrer.

2. *Same; contract for sale of lands; agents.*—A contract for the sale of lands made by an agent for the principal, but in the agent's name, is void under the statute of frauds, unless the agent is thereunto lawfully authorized in writing.

3. *Same; estoppel; endorsement of check as subscription to contract.*—Where an agent makes an unauthorized contract for the sale of land, for his principal, and in his own name, and a check in part payment of the purchase money is given payable to the principal and is sent to the principal, attached to the contract, the endorsement of the check and collection and retention of the money by the principal do not estop it from setting up the invalidity of the contract under the statute of frauds.

4. *Same; memorandum of sale.*—Where an agent makes an unauthorized contract for the sale of lands, and a check is given which recites that it is "part payment on coal lands," without specifying what lands are meant, such check is not a sufficient memorandum of the sale of the lands to save the contract from invalidity under the statute of frauds.

5. *Same; payment of part of purchase money; putting in possession.*—The only parol contract for the sale or lease of land which is not void under the statute of frauds, is where a part or the whole of the purchase money is paid and the purchaser is put in possession by the seller; the payment of part of the purchase money alone is not sufficient.

APPEAL from the Chancery Court of Jefferson. Heard before the Hon. JOHN C. CARMICHAEL.

VOL. 135.

The bill was filed by W. W. Thompson against New South Coal Company and others, and sought the specific performance of the following contract, which the bill alleged was made by Montgomery as agent for the New South Coal Company, namely:

"Birmingham, Ala., Feb. 18th, 1901. To whom it may concern. I have this day sold to W. W. Thompson 875 acres of land in Walker county, Alabama, being the same land now leased to Ellis Brothers by the New South Coal Company, and sold subject to said lease, more fully described as follows: [Here follows a description of the land] under authority as per letter of L. B. McFarland, copy of which is attached hereto, at and for the sum of $8.00 per acre and the additional sum of $350 as commission to me. Payable as follows: $2,683 33 in cash on delivery of deed and satisfactory title and the balance in two notes of $2,333.33 each, payable in one and two years from date of said delivery, bearing interest at eight per cent per annum. Said W. W. Thompson reserving the right to pay up said notes at any time upon giving thirty days' notice. To bind this sale said W. W. Thompson has paid me the sum of $250 by check payable to the New South Coal Company, receipt of which is hereby acknowledged, this February 18th, 1901. [signed] J. A. Montgomery."

The letter referred to in said contract is as follows:

"Memphis, Tenn., Feb. 18th, 1901. J. A. Montgomery, Birmingham, Ala. Dear Sir:—We have your favor of the 17th of February, and wish to accept your terms as to the sale of the 875 acres in so far as we can—that is, our president, Judge Latham, is now in California; we have not a majority of directors now in Memphis, and it will be several weeks before they will return and I can have a meeting that will formally authorize this sale. I am satisfied that when we can have this meeting they will do as I suggest, but I do not want to make now an agreement without authority. I suggest, however, that you go ahead and get up the abstract at our expense of this land, and proceed to do all we can until the return of Judge Latham. As to the balance of this sixteen hun-

dred acre tract, it occurs to me that the whole tract would furnish a better basis for the placing of bonds, than only a portion, and I hope that before we finally conclude this that you will be able to get them to take the whole sixteen hundred acres. Very truly, [signed] L. B. McFarland. We will expect to make some provision in our deed to purchaser giving us access to the R. R. for balance of our land and property, joint use of track they build. [Signed] McF."

The bill alleged that in accordance with said agreement and to bind same complainant gave said Montgomery, as agent, his check for $250, as follows: "Birmingham, Ala., Feb. 19, 1901. First National Bank of Birmingham. Pay to the order of New South Coal Company $250.00 two hundred and fifty—part payment on coal lands—Dollars [signed] W. W. Thompson." And that this check was sent by Montgomery to the New South Coal Company, and the money collected thereon by said company and retained by it.

The bill also showed a readiness and willingness on complainant's part to comply with the contract, and a failure and refusal on defendant's part to recognize the same or comply therewith.

Other averments, so far as material to the questions discussed, are shown in the opinion. Among other demurrers interposed thereto were the following: (1.) There is no equity in said bill of complaint. (2.) Said bill shows that said alleged agreement sought to be specifically enforced is void under the statute of frauds. These demurrers were sustained, and, complainant declining to amend, his bill was dismissed, and he appeals.

LEADBEATER & JOHNSTON, for appellant.—The first ground of demurrer is general and will not be considered.—Code, § 700; *Pate v. Hinson,* 104 Ala. 599.

As to signature by Montgomery in his own name under the circumstances alleged, see *Taylor v. A. & M. Asso.,* 68 Ala. 229.

The statute of frauds is not a valid objection to the case made out by the bill in some of its

aspects, which show ratification and estoppel, and hence this defense could not be raised by demurrer to the whole bill.—*Tillman v. Thomas,* 87 Ala. 321; *Beall v. Lehman,* 110 Ala. 446; *Echols v. Humes,* 106 Ala. 237.

As to acquiescence, ratification and estoppel, see Morawetz on Corp., §§ 618, 627, 630, 633, 635; *Taylor v. A. & M. Asso.,* 68 Ala. 220; 1 Am. & Eng. Ency. Law (2d ed.), 1191, 1196.

WALKER, TILLMAN, CAMPBELL & WALKER, *contra.* The contract alleged is void under the statute of frauds.—*Bolling v. Munchus,* 65 Ala. 558; *Phillips v. Adams,* 70 Ala. 373; *Lewis v. Teal,* 82 Ala. 288; *Manning v. Pippen,* 86 Ala. 357; *Trammell v. Craddock,* 93 Ala. 450; *White v. Levy,* 93 Ala. 484; *Clanton v. Scruggs,* 95 Ala. 279; *Beadle v. Seat,* 102 Ala. 532; *Harper v. Campbell,* 102 Ala. 342; *Strouse v. Elting,* 110 Ala. 132.

The contract resting in parol so far as the company is concerned, is not brought without the influence of the statute of frauds, without an averment that not only a part of the purchase money was paid, but that the purchaser was put in possession.—*Manning v. Pippen,* 95 Ala. 537; *Heflin v. Milton,* 69 Ala. 354.

The agent must be thereto lawfully authorized in writing before he can bind his principal.—*Heflin v. Milton,* 69 Ala. 354; *Linn v. McLean,* 85 Ala. 250.

The receipt and retention of the money do not estop defendant to plead the statute of frauds.—*White v. Levy,* 93 Ala. 484; *Clanton v. Scruggs,* 95 Ala. 279.

TYSON, J.—The bill in this cause seeks the specific performance of a contract for the sale of lands alleged to have been entered into between complainant and the respondent, New South Coal Company, and to have their rights in and to the lands adjudged superior to the claim of the respondents, Cornwell and Lopez, under and by virtue of a certain lease, executed by the New South Coal Company to Ellis Bros. and assigned by Ellis Bros. to Cornwell and Lopez. It is clear from the averments of the bill that complainant predicates all his

rights against Cornwell and Lopez upon his right to have the alleged contract between him and respondent Coal Company declared binding and efficacious. No other or independent equity is asserted or attempted to be enforced against them. So, then, the question is, do the facts alleged show a right to specific performance of the alleged contract against the Coal Company? If they do not, confessedly the complainant is not entitled to any relief whatever.

One of the objections taken to the bill by demurrer interposed by the Coal Company, which was sustained, is that the alleged contract upon which the complainant relies is void under the statute of frauds. The contract relied on by complainant is shown by the bill, and if, as shown, it is obnoxious to the statute of frauds, that defense may be appropriately set up by demurrer. Indeed, "a demurrer is the more appropriate mode of taking advantage of it."—*Bolling v. Munchus*, 65 Ala. 558; *Phillips v. Adams*, 70 Ala. 373; 3 Mayfield's Dig., 847, § 336. What is that contract? It is an agreement made with one J. A. Montgomery, who alone subscribes it, not as the agent or representative of anyone, but as an individual, and that, too, without authority as shown by the letter referred to in it, which is also made an exhibit to the bill, even if it be conceded that McFarland, the writer of it, was authorized by the Coal Company to write it. It cannot be doubted that if the contract with Montgomery was made with him as the agent of the Coal Company and that he undertook by that instrument to bind that company, that in order to do so he must have been *"lawfully authorized in writing."* And unless he was so authorized, any contract made by him as agent for his principal with respect to a sale of the lands is *void* under the statute of frauds.—§ 2152 of Code; *Linn v. McLean*, 85 Ala. 250, 255; *Johnson, v. Jones, Ib.* 286; *Hutton v. Williams*, 35 Ala. 503.

Doubtless for the purpose of avoiding the force and effect of the statute, the estoppel alleged in the bill is pleaded. Indeed, it could have been pleaded for no other purpose, except to give effect to the contract by

way of ratification of the act of Montgomery, the alleged agent of the Coal Company, in the making of it. The facts relied upon to constitute the estoppel may be stated to be these: That the check which complainant delivered to Montgomery as the cash payment, was payable to the Coal Company, and after being sent with the contract to and received by that company was indorsed by. it and the money collected upon it and retained. One theory seems to be that the indorsement of the check was a sufficient subscription by the Coal Company of the contract, within the purview of the statute. Of course, if this be sound, the retention by the defendant of the money collected upon it, is of no consequence. If it be true that the indorsement by the company of its name across the back of the check was the equivalent of its subscription of the contract under the statute, this made the contract its *in fact*—just as though it had affixed its name at the bottom of it, and there would be no need for the invocation of the doctrine of estoppel. But we do not think that the check was any part of the contract itself, although it may have been attached to it. They are not only separate and distinct pieces of paper, but separate and distinct obligations. The check was a sequence to the contract, and constituted no part of it. It was nothing more than the payment of a part of the purchase money after the terms of the contract had been fully agreed upon, reduced to writing and signed by Montgomery. It came into existence necessarily after the contract had become a completed executory one. Indeed, the dates of the two papers show this to be so.

The fact that the check was attached to the contract did not make it a writing containing any part of the negotiations leading up to and resulting in the contract, and, therefore, does not bring the case in that category of cases in which several writings containing the negotiations between the parties culminate in an agreement of sale.—*White v. Breen*, 106 Ala. 159. There is nothing on its face that shows it was given in part payment for the particular lands described in the alleged contract. It is true it does contain the words "part payment on

coal lands," but what lands are there referred to would have to be ascertained by resort to parol evidence which, of course, could not be done. It is, therefore, not in and of itself a sufficient memorandum of the sale of the lands within the requisites of the statute, if it be conceded that the indorsement by the Coal Company of the check is a subscription within the meaning of the statute.—*Nelson v. Shelby Mfg. & Imp. Co.*, 96 Ala. 515.

Having shown that the alleged contract was void on account of being obnoxious to the statute of frauds, and that the indorsement of the check did not import validity into it, and was not in and of itself a sufficient memorandum of sale, we shall next consider the question, did the acceptance of the check, the collection of the money upon it and its retention as purchase money, upon which, of course, may be predicated a verbal promise on the part of the Coal Company to make the sale, have the effect of avoiding a compliance with the statute? In other words, does the fact of the payment alone of a portion of the purchase money bring the parol contract of sale within the exception prescribed by the statute? The statute requires that "every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money or a portion thereof, be paid and the purchaser be put in possession of the land by the seller" must be "in writing and subscribed by the party to be charged therewith, or some other person by him thereunto lawfully authorized in writing." It will be noted that not only the payment of the purchase money or a portion thereof is necessary, *but that the purchaser be put in possession by the seller*, in order to come within the exception. Speaking to this point, it was said, in *Heflin v. Milton*, 69 Ala. 357: "The present statute contains an exception of the only parol contract for the lease or sale of lands which can be withdrawn from its operation. The exception is, when the purchase-money or a portion thereof is paid and the purchaser put in possession by the seller. The two facts must concur—the pay-

ment of the purchase-money or a part thereof and the placing of the purchaser in possession. The one without the other—the possession without paying part or the whole of the purchase-money, or paying the purchase-money or any part thereof without letting into possession—will not satisfy the requirements of the statute. The introduction of exceptions to the statute of frauds, the departure from its letter and policy by courts of equity, to prevent parties through fraud from escaping performance of contracts they were in sound morality bound to perform, was much regretted. * * * The purpose of the present statute is the exception of the parol contract for the lease or sale of lands, which can be withdrawn from its general words. No other can be introduced or recognized by judicial decision." In the concluding part of the opinion it is further said: "There must be a contract or agreement in writing, or a note or memorandum thereof in writing, subscribed by the party to be charged, or by his agent thereunto lawfully authorized in writing, or the concurring acts of part performance expressed in the statute, to avoid its operation. If there be not, however strong may be the parol evidence that the contract was made, that it was assented to and accepted, the party is not bound and cannot be charged. There can be no relaxation of the requisitions of the statute without introducing the mischief intended to be avioded." See also *Manning v. Pippen,* 95 Ala. 537; *Nelson v. Shelby Mfg. & Imp. Co., supra.* There is no pretense that the complainant was ever put in possession of the land.

The remaining question to be determined is whether the acceptance of the money with full knowledge that it was paid on account of the attempted sale by Montgomery estops the Coal Company from asserting the invalidity of the contract. In *Clanton v. Scruggs,* 95 Ala. 279, 283, it is said: "One party to an invalid executory agreement is not entitled to hold the other party to the agreement just as if it had been originally valid, because the latter has received the benefit of a part performance by the former. The fact that one of the parties to such an agreement has acted on the faith

of its validity does not raise up an estoppel against the other party to deny that it is binding on him. A mere breach of promise cannot constitute an estoppel *en pais.* * * * An executory agreement which is void under the statute of frauds cannot be made effectual by estoppel, merely because it has been acted on by the promisee, and has not been performed by the promisor. * * * Such a rule of estoppel would take the sting out of the statute of frauds, and defeat its manifest purpose."

In *White v. Levy,* 93 Ala. 484, Justice McClellan, speaking to this proposition, says: "To admit the doctrine elaborated in argument, that defendant is estopped to set up the statute of frauds here, because, while his contract was not in writing, yet he did promise to occupy the premises as tenant for the term commencing November 1st, 1889, and failed to notify plaintiff to the contrary, the consequence being that she lost opportunity to secure another tenant, would be to utterly destroy the statute. It is directed against this class of promises, entailing in most instances just this character of detriment to the promisee. The position is wholly untenable."

This principle was fully and distinctly recognized in *Nelson v. Shelby Mfg. & Imp. Co.,* *supra,* where the purchaser, who had not been put into possession, was allowed to recover back the purchase money he had paid to the seller. Had the seller in that case, who accepted the purchase money from the plaintiff, been estopped to invoke the defense of the statute of frauds, by reason of that fact, it is entirely clear that a recovery could not have been had by the plaintiff. Indeed, the main ground upon which his right to do so was placed, was that his vendor had not subscribed a note or memorandum in writing within the requirements of the statutes, and, therefore, the contract, being void, by the very terms of the statute, neither party was bound by it. The contract being unenforceable either at law or in equity the vendor was deemed to have money which in equity and good conscience belonged to the plaintiff. See also

[Southern Railway Company v. Howell.]

*Hicks v. Swift Creek Mill Co.,* 133 Ala. 411; 31 So. Rep. 947; *Junkins v. Lovelace,* 72 Ala. 303; Browne on Stat. of Frauds (5th ed.), § 461.

The decree sustaining the demurrer must be affirmed.